# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

EDWON KYSER, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-16-542-KEW
 )
D.J.F. SERVICES, INC., )
a foreign for profit )
corporation, )
 )
        Defendant. )

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (Docket Entry #30). Plaintiff began his employment with Defendant in October of 2014 as a Floor Hand in an oilfield crew. Earl Poole ("Poole") became Plaintiff's supervisor on the crew in approximately July of 2015. Plaintiff alleges that Poole began to sexually harass him about three weeks after Poole became his supervisor. Plaintiff testified in his deposition that daily "filthy comments" were made by Poole directed to him. The comments Plaintiff recalled consisted of Poole (1) telling Plaintiff to "suck on Poole's penis"; (2) identifying Plaintiff as gay; (3) asking Plaintiff to hold his penis every time Poole went to the bathroom; (4) walking up behind Plaintiff and putting his hand between the back side of his legs, "pretty much [his] butt crack", and squeezed and said "Oh, baby"; (5) pulling down his pants to his underwear, talking to Plaintiff and looking at him; (6) grabbing Plaintiff's derrick belt and pulling him to Poole; and

(7) texting Plaintiff on his cell phone and asking Plaintiff if he was playing with himself and if he stayed home and masturbated on a day Plaintiff had stayed home sick.

Plaintiff stated that he repeatedly told Poole to stop or quit making the comments which he found offensive. Plaintiff recognized in his testimony that "it's the oilfield. They talk dirty out there, but I mean, in a joking way." But that "it was never like that towards me. It was more aggressive towards me, like being the butt of it and – you know, every time I turned around, I was getting touched, and then him dropping his pants . . . ."

Plaintiff told the owner of Defendant, Donald J. Flint ("Flint"), that Poole was "riding him". Plaintiff testified Flint "cut me off and basically told me to start showing up to work more on time and coming to work more. But that was the problem, was I didn't want to be around Earl, you know." Plaintiff also stated he approached Flint about transferring to another job with Defendant in the yard, but that Flint told him that Poole was thinking about getting rid of Plaintiff anyway. Plaintiff took this statement to mean that his job was in Poole's hands, and he "kind of felt like I had nowhere to go."

On September 15, 2015, Plaintiff arrived at work two hours late and told Flint and Flint's wife that Poole had been harassing him and that he was going to try and get a different job. Plaintiff testified Flint responded, "Okay." Plaintiff alleges he

was constructively discharged as a result of the hostile work environment created by Poole.

Flint testified that his company did not have a formal handbook or a policy to address sexual harassment of an employee.

On December 8, 2016, Plaintiff initiated this action against Defendant asserting claims for (1) sexual harassment under Title VII; (2) sexual harassment under the Oklahoma Anti-Discrimination Act ("OADA"); (3) retaliation under Title VII; and (4) negligent supervision. Defendant filed the subject Motion contending that (1) Plaintiff cannot prove discrimination occurred on the basis of sex as required by Title VII; (2) the alleged conduct by Poole constituted "male-on-male horseplay" making it not actionable under Title VII; (3) the allegations fall short of creating a hostile work environment arising out of same sex sexual harassment; and (4) Plaintiff cannot establish a prima facie case for retaliatory discharge.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Universal Money Centers v. A.T. & T., 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). The moving party bears the initial burden

of showing that there is an absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed 2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. Applied Genetics v. Fist Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Sexual harassment in the workplace is a form of sex discrimination prohibited by Title VII. Adler v. Wal–Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). Direct liability for harassment can be demonstrated "if the employer was negligent with respect to the offensive behavior." Vance v. Ball State Univ., --- U.S. ----, 133 S.Ct. 2434, 2441, 186 L.Ed.2d 565 (2013). If the harasser is a supervisor rather than merely a co-worker, however, the employer may be vicariously liable for the conduct, depending

4

on the circumstances. Id. If the supervisor's harassment culminates in a "tangible employment action," the employer is strictly liable for sex discrimination, with no defense. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 762-63, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). If no tangible employment action occurs, the employer may still be vicariously liable for the supervisor's harassment if the plaintiff proves the harassment was severe or pervasive or that it altered the terms or conditions of employment and created an abusive working environment. Morris v. City of Colorado Springs, 666 F.3d 654, 663 (10th Cir. 2012). An employer may also avoid liability by establishing the affirmative defense espoused in Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998) and Ellerth, 524 U.S. at 765.

A "supervisor" under Title VII is an employee whom "the employer has empowered . . . to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Vance, 133 S.Ct. at 2443 (quoting Ellerth, 524 U.S. at 761). An employee, however, need not be empowered to take such tangible employment actions directly to qualify as a supervisor. A manager who works closely with his or her subordinates and who has the power to recommend or otherwise substantially influence tangible employment

5

actions, and who can thus indirectly effectuate them, also qualifies as a "supervisor" under Title VII. Id. at 2452.

While Flint appears to call into question whether Poole acted as Plaintiff's supervisor, Plaintiff testified that Flint told him that Poole wanted to get rid of Plaintiff which indicated to Plaintiff that Poole could affect his employment. Clearly, Plaintiff took his lead from Poole while working on the oilfield crew and Flint testified Poole was unhappy with Plaintiff's attendance which would indicate that Poole was in communication with Flint and could apparently affect his employment terms by his report. As a result, for the purpose of this Motion, Poole is considered Plaintiff's supervisor.

Defendant first considers the issue of same-sex harassment and whether it is actionable under Title VII. The United States Supreme Court clearly found that Title VII did not distinguish between opposite sex and same-sex actions in defining discrimination "because of . . . sex" as illegal, making harassment under either scenario actionable under Title VII. Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 79-80 (1998).

Defendant contends the Oncale court required a showing of "explicit or implicit proposals of sexual activity", that the harasser is homosexual, that the harasser is motivated by a general hostility toward the presence of a specific gender in the workplace, or evidence the harasser treats men and women

6

differently in the workplace. Defendant reads the Supreme Court's statements too narrowly. The court merely provided examples of avenues for proving "discrimination because of . . . sex." In the end, the conduct "need not be motivated by sexual desire" to constitute sex discrimination. Id. at 80. Rather, Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." The conduct must be sufficiently severe or pervasive so as to create an environment that a reasonable person would find hostile or abusive. Id. at 81.

Under the facts presented by this case in a light most favorable to Plaintiff, Poole created an objectively offensive atmosphere in the workplace which was so severe, as evidenced by sexual touching, and so pervasive, as it occurred every day repeatedly, so as to constitute actionable sexual harassment under Title VII. Defendant is unable to avail itself of the Faragher and Ellerth defense because it did not have a policy for addressing sexual harassment.

Moreover, no reasonably objective person could find Poole's conduct to represent "ordinary socializing" or "male-on-male horseplay." Instead, Poole appears to have employed sexual intimidation against Plaintiff which created an arguable intolerable workplace. Defendant also contends the allegations in this case are not as severe as in other case authority to which it cites. This Court would be remiss to fail to recognize a flexible

societal standard on the acceptability of sexual harassment of employees by persons of power - whether they be of the same or different gender as the victim - and the level of tolerance for such conduct. The viewpoint of the "reasonable person" is not static with time and Poole's conduct in this case is certainly sufficiently severe to warrant consideration by a jury. Even in an arguably more rough environment such as the oilfield, conduct can become so offensive so as to be considered objectively unreasonable - especially when the conduct includes sexual touching such as alleged in this case.

Defendant also seeks summary judgment on Plaintiff's claim for retaliatory discharge. To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action. <u>Argo v. Blue Cross & Blue Shield of Kansas, Inc.</u>, 452 F.3d 1193, 1202 (10th Cir. 2006) The evidence indicates Plaintiff never informed Flint of the specific or even general allegations of sexual harassment by Poole. As a result, the required causal link between Plaintiff's activity and his constructive discharge has not been established to maintain a claim for retaliation under Title VII.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary

Judgment (Docket Entry #30) is hereby **GRANTED**, in part, in that Plaintiff's claim for retaliation is **DISMISSED**. However, the remainder of the Motion is hereby **DENIED**.

IT IS SO ORDERED this 27th day of November, 2017.

Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma